STATE OF NORTH CAROLINA v. OMEGA PERRY, JR.

No. 159

(Filed 31 January 1977)

1. Criminal Law § 127— arrest of judgment — when proper

A motion in arrest of judgment is proper when it is apparent that no judgment against the defendant could be lawfully entered because of some fatal error appearing in (1) the organization of the court, (2) the charge made against the defendant (the information, warrant or indictment), (3) the arraignment and plea, (4) the verdict, and (5) the judgment.

2. Rape §§ 3, 7— indictment sufficient to charge second degree rape — evidence showing first degree — conviction for second degree rape proper

An indictment which charged that the defendant "did, unlawfully, wilfully and feloniously ravish and carnally know, by force and against her will," the prosecuting witness, a female, by use of a "dangerous" weapon but which did not charge the use of a "deadly" weapon or allege that defendant was more than 16 years of age, though insufficient to charge first degree rape, did charge all the elements of second degree rape; therefore, where the jury found

State v. Perry

defendant guilty of first degree rape, it necessarily determined that he was guilty of each element of rape in the second degree, and the record proper would therefore support the entry of a judgment imposing a proper sentence for second degree rape.

**3. Indictment and Warrant § 9— sufficiency of indictment to charge crime**

It is well settled that an indictment will not support a conviction for a crime all the elements of which crime are not accurately and clearly alleged in the indictment.

**4. Rape § 1— elements of first degree rape**

The elements of rape in the first degree, the victim being 12 years of age or older, are: (1) carnal knowledge of a female person, (2) by force (or by fear, fright or coercion), (3) against the will of the victim, (4) the defendant being more than 16 years of age, and (5) the victim's resistance having been overcome or her submission having been procured by the use of a deadly weapon, or by the infliction of serious bodily injury upon her. G.S. 14-21.

**5. Rape § 3— indictment sufficient to charge second degree rape — evidence showing first degree rape — conviction for first degree rape improper**

Where an indictment was sufficient to charge rape in the second degree but not sufficient to charge rape in the first degree, a conviction for first degree rape could not stand, even though the evidence was sufficient to support a conviction for first degree rape.

APPEAL by defendant from *McLelland, J.,* at the 28 June 1976 Session of VANCE.

The defendant, having been found guilty of first degree rape, was sentenced to death. The only assignments of error brought forward into his brief on appeal are with reference to the trial judge's instructions to the jury and the denial of his motion in arrest of judgment. The defendant did not testify in his own behalf but introduced evidence consisting of testimony by his parents and friends which, if true, established an alibi. The testimony of the defendant's mother showed that he was 19 years of age.

The evidence for the State was to the following effect:

The prosecuting witness, a woman 30 years of age, divorced and living in an apartment with her five small children, was acquainted with the defendant, who lived in the apartment of his parents three doors from that of the prosecuting witness. She had never "dated" him. At approximately 4 a.m. on 2 February 1976, she and her children were in her apartment asleep. She was awakened by someone standing over her. This

was the defendant. She had not given him permission to come into her apartment and when she went to bed her door was locked.

The prosecuting witness got out of bed and tried to get away and to fight the defendant but he hit her in the eye, knocked her down, held a knife to her throat and told her not to scream. She identified a pearl-handled pocketknife, offered in evidence by the State, as the knife so held to her throat by the defendant. Thereupon, he proceeded to have sexual intercourse with her, against her will, upon the floor of her bedroom.

Following this, pursuant to the defendant's instructions, the prosecuting witness sat on the bed and smoked a cigarette. Thereafter, he again had sexual intercourse with her against her will, to which she submitted because he was threatening her with the knife and threatening to injure her children. Saying he was going to kill her, he then compelled her to accompany him out of the house and to the bank of a nearby pond into which he said he would throw her body. Instead of killing her, he again had sexual intercourse with her against her will, continuing to hold the knife up against her. They returned to her apartment where he struck her again and stabbed her with the knife. He also inserted the knife into her vagina. Following this he compelled her to take him to ride in her car. After proceeding a short distance, he took over the driving and returned to her apartment where he committed an unnatural sexual act upon her and then departed.

After the defendant left, the prosecuting witness dressed, got her children up, went over to her parents' home and told them what had happened. They took her to the hospital where she remained for 10 days. The attending physician testified that he examined the prosecuting witness in the early morning of 2 February in the emergency room of the hospital, at which time she complained of having been assaulted. She had multiple bruises and swelling about the eyes and face with lacerations of the face, neck and upper chest and injuries in the rectal area, which was swollen. The bone under one eye had sustained a "blowout" fracture.

A forensic serologist, employed by the State Bureau of Investigation, testified that she examined the knife which had been identified by the prosecuting witness and introduced in evidence, and had found thereon blood and spermatozoa.

Investigating officers testified that they saw the prosecuting witness at the hospital on 2 February 1976, at which time they observed her right eye was bruised, the left eye was swollen shut, there were abrasions on the chin and both sides of the neck and a laceration on the top of her left breast. She told them that she had been sexually assaulted repeatedly by the defendant that morning and that he had used a pearl-handled knife, which at one point in the occurrence, he had inserted into her vagina. Following the defendant's arrest, one of the investigating officers went to the home of the defendant's parents, with whom the officer was well acquainted, and, with the consent and assistance of the defendant's mother, searched his bedroom and found under the bed a pearl-handled knife so identified by the prosecuting witness.

The testimony of the defendant's parents and friends was to the effect that, from early in the evening of 1 February to 3 a.m. on 2 February, the defendant was with his friends in an apartment near to but other than that of the prosecuting witness, and at 3 a.m. on 2 February he returned to the apartment of his parents, went to bed and remained in bed until 9 a.m. These witnesses also testified that at 3 a.m. they observed in the parking lot of the apartment development a transfer truck habitually driven by the "boyfriend" of the prosecuting witness, and at 5 a.m. they observed this truck leave the parking lot and the automobile of the prosecuting witness follow it.

*Rufus L. Edmisten, Attorney General, by James Peeler Smith, Associate Attorney, and David S. Crump, Associate Attorney, for the State.*

*J. Henry Banks for defendant.*

LAKE, Justice.

[1]  There was no error in the denial of the motion in arrest of judgment. Such motion is to be distinguished from a motion to vacate or set aside an erroneous judgment in order that a proper judgment may be entered. A motion in arrest of judgment is proper when it is apparent that no judgment against the defendant could be lawfully entered because of some fatal error appearing in (1) the organization of the court, (2) the charge made against the defendant (the information, warrant or indictment), (3) the arraignment and plea, (4) the verdict, and (5) the judgment. 21 Am. Jur. 2d, Criminal Law, §§ 520,

521; Strong, N. C. Index 3d, Criminal Law, §§ 127.1, 127.2; *State v. McClain,* 282 N.C. 357, 364, 193 S.E. 2d 108 (1972). "A motion in arrest of judgment only lies for some error appearing on the face of the record which vitiates the proceedings." *State ex rel. Woods v. Reed,* 93 W.Va. 150, 116 S.E. 138 (1923). See also: *State v. Carver,* 49 Me. 588 (1862) ; Black's Law Dictionary.

The defendant contends that the indictment upon which he was tried and convicted for first degree rape was fatally defective in that it did not allege that the defendant was 16 years of age or older and in that it did not allege that the victim had her resistance overcome, or submission procured, by the use of a deadly weapon or by the infliction of serious bodily injury upon her. For the reasons set forth below, we are of the opinion that the indictment will not support a conviction and sentence for first degree rape. It is, however, sufficient to support a conviction and sentence for second degree rape. Consequently, the indictment does charge a criminal offense and upon the defendant's conviction of such offense a proper sentence may be imposed upon him. Therefore, the motion in arrest of judgment was properly overruled.

Although the defendant does not assign as error the sentence imposed, his appeal is, itself, an exception to the judgment rendered and since error therein appears on the face of the record proper, we may consider the propriety of the sentence imposed and, for error therein, remand the case to the Superior Court for the entry of a proper judgment.

Even if there were no other error in the sentence imposed, it would be necessary to vacate the sentence to death and remand the case to the Superior Court for entry of a proper sentence by reason of the decision of the Supreme Court of the United States in *Woodson v. North Carolina,* ___ U.S. ___, 96 S.Ct. 2978, 49 L.Ed. 2d 944 (1976) ; *State v. Montgomery,* 291 N.C. 91, 229 S.E. 2d 572 (1976). However, for the reasons hereinafter set forth, we may not remand the present case to the Superior Court for the imposition of a sentence to imprisonment for life as was done in *State v. Montgomery, supra,* and in numerous other recent decisions of this Court in which sentences to death, previously affirmed by this Court, could not be carried out by reason of the decision in *Woodson v. North Carolina, supra.*

G.S. 14-21 provides:

"Every person who ravishes and carnally knows any female of the age of 12 years or more by force and against her will, or who unlawfully and carnally knows and abuses any female child under the age of 12 years, shall be guilty of rape, and upon conviction, shall be punished as follows:

"(a) First-Degree Rape—

"(1) If the person guilty of rape is more than 16 years of age, and the rape victim is a virtuous female child under the age of 12 years, the punishment shall be death; or

"(2) If the person guilty of rape is more than 16 years of age, and the rape victim had her resistance overcome or her submission procured by the use of a deadly weapon, or by the infliction of serious bodily injury to her, the punishment shall be death.

"(b) Second-Degree Rape—Any other offense of rape defined in this section shall be a lesser-included offense of rape in the first degree and shall be punished by imprisonment in the State's prison for life, or for a term of years, in the discretion of the court."

Prior to the enactment of G.S. 14-21 in its present form by Chapter 1201, Session Laws of 1973 (Second Session, 1974), there was but one degree of rape in North Carolina. The Act of 1973 divided the crime into two separate offenses. It did not change the definition of rape per se. Where, as here, the victim is more than 12 years of age, "Rape is the carnal knowledge of a female person by force and against her will." *State v. Hines*, 286 N.C. 377, 380, 211 S.E. 2d 201 (1975); *State v. Henderson*, 285 N.C. 1, 203 S.E. 2d 10 (1974). It is expressly so declared in G.S. 14-21.

[2] A verdict of guilty of rape in the first degree necessarily includes the jury's determination that the defendant is guilty of each element of rape in the second degree, which the statute declares to be "a lesser-included offense of rape in the first degree." An indictment which charges, as the indictment in the present case does, that the defendant "did, unlawfully, wilfully and feloniously ravish and carnally know, by force and against her will," the prosecuting witness, a female, charges all of the

elements of second degree rape. Thus, the indictment in the present case does charge a criminal offense, namely, second degree rape, even if, for the reasons stated by the defendant, the indictment falls short of a charge of first degree rape. The jury, by its verdict, has found the defendant guilty of all of the elements of second degree rape. Therefore, the record proper will support the entry of a judgment imposing a proper sentence for second degree rape and the motion in arrest of judgment was properly denied.

[3, 4] It is well settled that an indictment will not support a conviction for a crime all the elements of which crime are not accurately and clearly alleged in the indictment. *State v. Taylor,* 280 N.C. 273, 185 S.E. 2d 677 (1972) ; *State v. Sparrow,* 276 N.C. 499, 173 S.E. 2d 897 (1970) ; *State v. Riera,* 276 N.C. 361, 172 S.E. 2d 535 (1970) ; *State v. McBane,* 276 N.C. 60, 170 S.E. 2d 913 (1969) ; *State v. Lackey,* 271 N.C. 171, 155 S.E. 2d 465 (1967) ; *State v. Smith,* 241 N.C. 301, 84 S.E. 2d 913 (1954) ; *State v. Miller,* 231 N.C. 419, 57 S.E. 2d 392 (1950) ; *State v. Morgan,* 226 N.C. 414, 38 S.E. 2d 166 (1946) ; Strong, N. C. Index 2d, Indictment and Warrant, § 9. The elements of rape in the first degree, the victim being 12 years of age or older, are: (1) Carnal knowledge of a female person, (2) by force (or by "fear, fright or coercion" as stated in *State v. Henderson, supra),* (3) against the will of the victim, (4) the defendant being more than 16 years of age, and (5) the victim's resistance having been overcome or her submission having been procured by the use of a deadly weapon, or by the infliction of serious bodily injury upon her. G.S. 14-21.

The indictment in the present case reads:

"THE JURORS FOR THE STATE UPON THEIR OATH PRESENT, That Omega Perry, Jr., in Vance County, on or before the 2nd day of February 1976, with force and arms, at and in the County aforesaid, did, unlawfully, wilfully and feloniously ravish and carnally know [the prosecuting witness] a female, by force and against her will by use and threatened use *of firearm or other dangerous weapon* against the form of the statute in such case made and provided and against the peace and dignity of the State." (Emphasis added.)

[2] The uncontradicted evidence (the defendant's sole defense being alibi) shows a vicious, brutal rape in which the submis-

sion of the prosecuting witness was procured by the use of a knife and by the infliction upon her of serious bodily injuries. It also shows the defendant, at the time of the offense, was more than 16 years of age. Thus, the evidence is ample to show rape in the first degree. However, the indictment does not charge this offense since it does not charge the use of a "deadly" weapon but the use of a "dangerous" weapon, the two terms not being synonymous, and, further, it does not allege that the defendant, at the time of the offense, was more than 16 years of age.

This Court has repeatedly held that a conviction for murder in the first degree may be sustained under an indictment which does not charge either premeditation and deliberation or murder in the perpetration of a felony. *State v. Watkins,* 283 N.C. 17, 194 S.E. 2d 800 (1973) ; *State v. Talbert,* 282 N.C. 718, 194 S.E. 2d 822 (1973) ; *State v. Frazier,* 280 N.C. 181, 185 S.E. 2d 652 (1972) ; *State v. Haynes,* 276 N.C. 150, 171 S.E. 2d 435 (1970) ; *State v. Mays,* 225 N.C. 486, 35 S.E. 2d 494 (1945) ; *State v. Smith,* 223 N.C. 457, 27 S.E. 2d 114 (1943). Those cases are, however, distinguishable from the present case (rape) for the reason that G.S. 15-172 specifically provides:

*"Verdict for murder in first or second degree.*—Nothing contained in the statute law dividing murder into degrees shall be construed to require any alteration or modification of the existing form of indictment for murder, but the jury before whom the offender is tried shall determine in their verdict whether the crime is murder in the first or second degree."

G.S. 15-144 provides:

*"Essentials of bill for homicide.*—In indictments for murder and manslaughter, it is not necessary to allege matter not required to be proved on the trial; but in the body of the indictment, after naming the person accused, and the county of his residence, the date of the offense, the averment 'with force and arms,' and the county of the alleged commission of the offense, as is now usual, it is sufficient in describing murder to allege that the accused person feloniously, willfully, and of his malice aforethought, did kill and murder (naming the person killed), and concluding as now required by law; and it is sufficient

in describing manslaughter to allege that the accused felo-
niously and wilfully did kill and slay (naming the person
killed), and concluding as aforesaid; and any bill of in-
dictment containing the averments and allegations herein
named shall be good and sufficient in law as an indictment
for murder or manslaughter as the case may be."

As observed by Justice Sharp, now Chief Justice, in *State
v. Talbert, supra,* the crime of murder was divided into two de-
grees by Chapter 85 of the Session Laws of 1893 and G.S.
15-172 was originally a part of that Act. The "existing form of
indictment" to which that Act (and now G.S. 15-172) referred
was prescribed by Chapter 58 of the Session Laws of 1887 (now
G.S. 15-144) and thus antedated the division of the offense of
murder into two degrees. Thus, as Justice Sharp, now Chief
Justice, likewise observed in *State v. Watkins, supra,* the "legis-
lative fiat made the existing form a sufficient indictment for
murder in either the first or second degree." There is no such
statutory provision with reference to the offenses of rape in
the first degree and rape in the second degree.

Similarly, there is no such provision with reference to the
form of the indictment for the offenses of burglary in the first
degree and burglary in the second degree. In *State v. Fleming,*
107 N.C. 905, 12 S.E. 131 (1890), the indictment charged the
defendant with burglary "as in the old form, without alleging
that the building was in the occupation of anyone at the time
of the commission of the crime," as the evidence showed it to
be. The Court, speaking through Justice Clark, later Chief Jus-
tice, said:

"This was not required at common law, nor under the
Code, sec. 995, but now, under the provision of chapter
434, Laws 1889 [G.S. 14-51], the omission of that averment
makes the indictment good only as an indictment for bur-
glary in the second degree, and for that offense the defend-
ant was convicted. To constitute a sufficient indictment for
burglary in the second degree it is not required to use the
negative averment that the dwellinghouse was not actually
occupied at the time of the commission of the crime. Bur-
glary being sufficiently charged, as at common law, the
omission of the additional averment of actual occupation
required by the act of 1889 to constitute the capital felony
of burglary in the first degree leaves simply the indictment

good for the other degree of burglary, in which that averment is not essential."

**[5]**   Similarly, the indictment in the present case was sufficient to charge rape in the second degree but not sufficient to charge rape in the first degree and, though the evidence was sufficient to support a conviction of rape in the first degree, a conviction for that offense cannot be sustained in this case. The verdict must, therefore, be regarded as a verdict of guilty of rape in the second degree.

In *State v. Courtney*, 248 N.C. 447, 103 S.E. 2d 861 (1958), the indictment was for rape (only one degree of that crime being then recognized under the law of this State) and it did not allege the age of the defendant. Upon a verdict of "guilty of assault on a female," the defendant was sentenced to imprisonment for 12 to 18 months. He contended that since the jury had not found that he was over 18 years of age, the maximum legal sentence was a fine not in excess of $50.00 or imprisonment for a term not in excess of 30 days. In affirming the sentence, this Court, speaking through Justice Bobbitt, later Chief Justice, said:

"Ch. 193, Public Laws of 1911, amending Revisal, Sec. 3620, was first construed in *S. v. Smith*, 157 N.C. 578, 72 S.E. 853. *The indictment, which contained no allegation as to the defendant's age,* was for an assault with intent to commit rape. The verdict was guilty of 'assault and battery on Lillian Whitson—the defendant Turner Smith being over 18 years of age.' The judgment imposed a 2-year prison sentence. After serving 30 days, the defendant, in *habeas corpus* proceedings, urged as ground for immediate discharge that, *absent an allegation that he was more than 18 years old,* the maximum lawful sentence was 30 days. This Court found no error in the order discharging the writ and remanding the petitioner to custody.

"These specific holdings in *S. v. Smith, supra,* have been followed consistently by this Court:

"1. The said 1911 Act 'was not intended to create a separate and distinct offense in law, to be known as an assault and battery by a man, or boy over 18 years of age, upon a woman,' for 'it was always a crime for a man, or a boy over 18 years of age, to assault a woman.' As stated

succinctly by Barnhill, J., (later C.J.) in *S. v. Jackson,* 226 N.C. 66, 36 S.E. 2d 706: 'G.S. 14-33 creates no new offense. *It relates only to punishment.'*

"2. *The presumption is that the male person charged is over 18 years of age;* and the fact, if it be a fact, that he is not over 18 years of age, relevant solely to punishment, is a matter of defense. * * *

"3. Since it is not an essential element of the criminal offense, it is not required that the indictment allege that the defendant was a male person over 18 years of age at the time of the alleged assault. * * *

"Whether a deadly weapon was used, whether serious damage was done, whether there was an intent to kill, whether there was an intent to commit rape, relate directly to the defendant's *conduct* in relation to the alleged assault; but whether he was then *a man or boy over 18 years of age* relates solely to the defendant's *personal status* at the time of the alleged assault." (Emphasis added.)

Thus, it is established in the law of this State that one lawfully convicted of assault upon a female may be sentenced to a longer term of imprisonment if the evidence shows him to be, and he is found to be, over 18 years of age than would be proper in the absence of such evidence and finding, even though the indictment under which he was tried does not allege his age. That case, however, is also distinguishable from the present case.

As the Court also said in *State v. Courtney, supra:*

"Section 3620, Revisal of 1905, provided: *'Assault, punishment for.* In all cases of an assault * * * the person convicted shall be punished by fine or imprisonment, or both, at the discretion of the court: *Provided,* that where no deadly weapon has been used and no serious damage done, the punishment in assaults * * * shall not exceed a fine of fifty dollars or imprisonment for thirty days; but this proviso shall not apply to cases of assault with intent to kill, or with intent to commit rape.'

"By Chapter 193, Public Laws of 1911, the General Assembly amended said Section 3620 by adding at the end thereof the following: 'or to cases of assault or assault and

battery by any man or boy over 18 years of age on any female person.'" (Emphasis added.)

The language of Section 3620 of the Revisal of 1905 and of the amending Act of 1911 makes it clear that, as the Court held in *State v. Smith, supra,* the purpose of the proviso, both as originally worded and as amended, was not to create a new offense or to divide the existing offense of assault into degrees, but was simply to provide for punishment of the offender. In contrast, G.S. 14-21, as amended in 1973, divided the crime of rape into two separate crimes, specifically providing that second degree rape "shall be a lesser-included offense of rape in the first degree."

Thus, we conclude that the age of the defendant is an essential element of first degree rape and a conviction for that offense cannot be sustained under an indictment which does not allege the defendant to have been more than 16 years of age at the time of the commission of the offense. Thus, the defendant in the present case cannot be sentenced for first degree rape. However, in *State v. Courtney, supra,* the Court also said:

"Ordinarily, the illegality of the judgment does not vacate the verdict; but the established practice is to set aside the judgment and remand the cause for proper judgment on the verdict."

G.S. 14-21 (b) provides that the punishment for second degree rape shall be "imprisonment in the State's prison for life, or for a term of years, in the discretion of the court." The court in which this discretion is vested is, of course, the trial court, not this Court. Therefore, we may not remand this case to the Superior Court of Vance County with direction that it impose upon the defendant a sentence of life imprisonment as we did in *State v. Montgomery, supra,* in which the defendant was lawfully convicted of first degree rape.

This case must be, and is hereby, remanded to the Superior Court of Vance County for the imposition by it upon the defendant of a sentence to imprisonment for life or such term of years as that court, in its discretion, deems proper. The Superior Court is, therefore, directed to cause the defendant to be brought before it and to cause the verdict to be corrected to a verdict of guilty of second degree rape and to sentence the defendant, for that offense, to imprisonment in the State's

prison for life or for a term of years, in the discretion of the court.

We have carefully considered the defendant's assignments of error relating to the instructions given by the trial court to the jury. We find therein no error entitling the defendant to a new trial on the merits. No useful purpose would be served by discussing these alleged errors in the charge.

Judgment vacated.

Remanded for correction of verdict and imposition of proper sentence.